# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY GLOSS, | ) 1:05-CV-0487 OWW JMD HC |
| Petitioner, | )<br>) |
| v. | ) FINDINGS AND RECOMMENDATION<br>) REGARDING PETITION FOR WRIT OF<br>) HABEAS CORPUS |
| D.L. RUNNELS, Warden, | )<br>) |
| Respondent. | )<br>) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Kern County Superior Court.  On July 25, 2002, Petitioner was convicted by jury for selling cocaine base (Cal. Health & Safety Code § 11352) with two prior convictions for robbery that qualified as strikes (Cal. Penal Code §§ 211, 667, 1170.12), a prior conviction for possessing cocaine base for sale that qualified for a drug conviction enhancement (Cal. Health & Safety Code §§ 11351.5, 11370.2(a)), and three prior prison terms (Cal. Penal Code § 667.5(b)).  (Answer at 2.)  On August 22, 2002, after striking a prior prison term finding, the court sentenced Petitioner to 30 years to life.  (Id.)

On January 16, 2003, Petitioner appealed to the California Court of Appeal.  On March 4,

1   2004, the court affirmed the judgment.  (Answer at 2; Lodged Docs. 1-5.)

2       On April 7, 2004, Petitioner filed a petition for review in the California Supreme Court.  On

3   May 12, 2004, the court denied the petition.  (Answer at 2; Lodged Docs. 6-7.)

4       On April 6, 2005, Petitioner filed the instant petition in this Court.  The petition raises the

5   following five grounds for relief: 1) violation of Fourth Amendment rights when police searched

6   motel room without evidence that parolee Rosemary Bravo was residing therein; 2) trial court

7   violated Petitioner's due process rights by admitting evidence that he had been arrested for

8   possession of cocaine pipes twelve days before the instant arrest; 3) denial of effective assistance of

9   counsel; 4) violation of Sixth and Fourteenth Amendments when trial court granted directed verdict

10  on the issue of identity relating to prior convictions; and 5) sentence of 30 years to life violated

11  Eighth Amendment prohibition on cruel and unusual punishment.

12      On June 17, 2005, the Court issued a Findings and Recommendation recommending that

13  ground one of the petition be dismissed with prejudice.  (Court Doc. 12.)  On July 25, 2005,

14  Petitioner filed objections to the Findings and Recommendation.  (Court Doc. 13.)  On August 12,

15  2005, the Court adopted the Findings and Recommendation, dismissing ground one of the petition.

16  (Court Doc. 14.)

17      On November 14, 2005, Respondent filed an answer to the petition.

18      On January 9, 2006, Petitioner filed a traverse to the answer.

19      On October 9, 2007, Petitioner filed a notice of new case authority.

20      On October 12, 2007, Respondent filed a response to the notice of new case authority.

21                          **FACTUAL BACKGROUND**[1]

22      The facts at issue occurred on two different dates in 2002.  On February 8, 2002, informant

23  Alejandro Quiroa made a buy of $20 worth of cocaine base from Petitioner on South Union Avenue

24  in Bakersfield.  Petitioner told Quiroa that his name was "Bobaloo" and Quiroa noticed a marijuana

25  leaf tattoo on Petitioner's neck.  At the time of the buy, Quiroa was driving a video surveillance

26  equipped van but the video was deactivated, he was wearing a tape but forgot to turn it on, and he

27

28

---

[1] The facts are derived from the factual summary set forth by the California Court of Appeal in its opinion of March 4, 2004 and are presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1); Lodged Doc. 5.

1   was wearing a wire but the testifying officer could not remember if he had listened to the transaction.

2   After the transaction, Quiroa met Bakersfield police officers who took the cocaine and searched the

3   van Quiroa had been driving.  Quiroa later identified Petitioner from a photograph.  Subsequent

4   attempts to locate "Bobaloo" selling on the street were unsuccessful, though Quiroa was once told by

5   an unnamed person on the street that "Bobaloo" was selling at the north end of Union.

6        In addition, the prosecution presented evidence that on January 27, 2002, approximately two

7   weeks prior to the charged incident, officers conducted a parole search of Rosemary Bravo at the

8   Star-Liter Motel.  Petitioner was present in the motel room with Bravo, and he admitted to officers at

9   the time that two of the cocaine pipes in the room belonged to him and that he went by the name

10  "Bobaloo."

11                              **DISCUSSION**

12  **I.  Jurisdiction**

13        Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

14  to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

15  the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

16  375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S.

17  Constitution.  In addition, the conviction challenged arises out of the Kern County Superior Court,

18  which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

19  Accordingly, the Court has jurisdiction over the action.

20        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

21  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

22  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114

23  F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996),

24  *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320

25  (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition

26  was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

27  **II.  Legal Standard of Review**

28        This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

1  pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

2  Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

3       The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death

4  Penalty Act which became effective on April 24, 1996.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70 (2003).

5  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of

6  the claim "resulted in a decision that was contrary to, or involved an unreasonable application of,

7  clearly established Federal law, as determined by the Supreme Court of the United States" or

8  "resulted in a decision that was based on an unreasonable determination of the facts in light of the

9  evidence presented in the State Court proceeding."  28 U.S.C. § 2254(d); <u>see</u> <u>Lockyer</u>, 538 U.S. at

10  70-71; <u>see</u> <u>Williams</u>, 529 U.S. at 413.

11       As a threshold matter, this Court must "first decide what constitutes 'clearly established

12  Federal law, as determined by the Supreme Court of the United States.'"  <u>Lockyer</u>, 538 U.S. at 71,

13  *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court

14  must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

15  of the relevant state-court decision."  <u>Id.</u>, *quoting* <u>Williams</u>, 592 U.S. at 412.  "In other words,

16  'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set

17  forth by the Supreme Court at the time the state court renders its decision."  <u>Id.</u>

18       Finally, this Court must consider whether the state court's decision was "contrary to, or

19  involved an unreasonable application of, clearly established Federal law."  <u>Lockyer</u>, 538 U.S. at 72,

20  *quoting* 28 U.S.C. § 2254(d)(1).  "Under the 'contrary to' clause, a federal habeas court may grant

21  the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

22  question of law or if the state court decides a case differently than [the] Court has on a set of

23  materially indistinguishable facts."  <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72.

24  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court

25  identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies

26  that principle to the facts of the prisoner's case."  <u>Williams</u>, 529 U.S. at 413.

27       "[A] federal court may not issue the writ simply because the court concludes in its

28  independent judgment that the relevant state court decision applied clearly established federal law

1   erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Id.</u> at 411.  A

2   federal habeas court making the "unreasonable application" inquiry should ask whether the state

3   court's application of clearly established federal law was "objectively unreasonable."  <u>Id.</u> at 409.

4         Petitioner has the burden of establishing that the decision of the state court is contrary to or

5   involved an unreasonable application of United States Supreme Court precedent.  <u>Baylor v. Estelle</u>,

6   94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

7   Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

8   decision is objectively unreasonable.  <u>See</u> <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600-01 (9th Cir.

9   1999).

10        AEDPA requires that we give considerable deference to state court decisions.  The state

11  court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's

12  interpretation of its own laws.  <u>Souch v. Schaivo</u>, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*,

13  537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

14  **III.  Review of Petitioner's Claims**

15        **A.  Ground Two**

16        Petitioner argues that his due process rights were violated when the trial court admitted

17  evidence of his arrest on January 27, 2002 for possession of cocaine pipes to show that he was aware

18  of the nature of cocaine base.  Petitioner argues that the admission of the prior arrest violated his

19  rights because he offered to stipulate to his knowledge of the nature of cocaine base.

20        This claim was presented in an appeal to the California Court of Appeal, which affirmed the

21  judgment on March 4, 2004.  (Lodged Docs. 1-5.)  The issue was then raised in a petition to the

22  California Supreme Court, which summarily denied review.  (Lodged Docs. 6-7.)  The California

23  Supreme Court, by its "silent order" denying the petition, is presumed to have denied the claims

24  presented for the same reasons stated in the opinion of the lower court.  <u>Ylst v. Nunnemaker</u>, 501

25  U.S. 797, 803 (1991).

26        In rejecting Petitioner's claim, the Court of Appeal found that the admission of the prior

27  arrest was erroneous, but that the error was harmless.  The court reasoned that the evidence was

28  cumulative on the issue of knowledge and that the jury was not likely to convict Petitioner based on

1 | knowing of the prior arrest, as the trial court gave a limiting instruction and allowed Petitioner's

2 | counsel to emphasize the limited purpose of the evidence during closing argument.  (Lodged Doc. 5

3 | at 5-7.)

4 |       "State prisoners are entitled to habeas relief under 28 U.S.C. § 2254 only if their detention

5 | violates the Constitution or a federal statute or treaty.  A state court's procedural or evidentiary ruling

6 | is not subject to federal habeas review unless the ruling violates federal law, either by infringing

7 | upon a specific federal constitutional or statutory provision or by depriving the defendant of the

8 | fundamentally fair trial guaranteed by due process."  Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir.

9 | 1995) (citations omitted).  Further, "[t]o grant relief where a state court has determined that a

10 | constitutional error was harmless, we must both determine (1) that the state court's decision was

11 | 'contrary to' or an 'unreasonable application' of Supreme Court harmless error precedent, and (2)

12 | that the petitioner suffered prejudice under *Brecht* from the constitutional error."  Inthavong v.

13 | Lamarque, 420 F.3d 1055, 1059 (9th Cir. 2005).  "Since both the *Brecht* and the AEDPA/*Esparza*

14 | tests must be satisfied with respect to harmless error before relief can be granted, we are not obliged

15 | to address them in any particular order."  Id. at 1061.

16 |       Here, the Court of Appeal did not identify the particular standard it used to find the error

17 | harmless.  It did, however, find that the error was harmless "under any standard."  (Lodged Doc. 5 at

18 | 7.)  The proper standard for the court's review is set forth in *Chapman v. California*, which requires

19 | the court to find that the error was harmless beyond a reasonable doubt.  See Bains v. Cambra, 204

20 | F.3d 964, 971 n.3 (9th Cir. 2000) ("The *Chapman* standard is a 'harmless beyond a reasonable

21 | doubt' standard applied (at least for direct appeals) by all courts (state and federal) in reviewing

22 | constitutional magnitude, trial type errors."); Chapman v. California, 386 U.S. 18, 24 (1967)

23 | ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a

24 | belief that it was harmless beyond a reasonable doubt.").  It is presumed that the Court of Appeal

25 | knew and applied the proper standard.  See Juan H. v. Allen, 408 F.3d 1262, 1270 (9th Cir. 2005)

26 | ("In conducting habeas review, we 'presum[e] that state courts know and follow the law.'").

27 |       The state court's determination was not unreasonable.  The trial court instructed the jury

28 | regarding the admission of the prior arrest evidence as follows:

1

2

3

> Evidence has been introduced for the limited purpose of showing that the defendant was involved in an incident which occurred on January 27, 2002, at the Star-Liter Motel.  That evidence was presented for the limited purpose of establishing that the defendant had knowledge of the nature of cocaine base and was known as Bobaloo. (RT at 421.)

4

Petitioner's counsel, in the following statements, also emphasized to the jury the limited extent to which it could consider the evidence:

5

6

7

8

9

10

> The fact that the office – that officers were at the motel room where he was, that was where the parole search for Rosemary Bravo was going on and they found the – they found the smoking pipes and stuff, that evidence is presented for one purpose and one purpose only in the case, and that is on the issue of the District Attorney's burden of proving that this individual would know what cocaine base is.  It's not presented nor to be considered for other purposes such as he's a bad person or he sells or anything like that.  It's just on the issue of knowledge, because they have to prove beyond a reasonable doubt not only that he sold the stuff, but that he knew that the stuff that supposedly he sold was, in fact, cocaine base.  (RT at 392.)

11

12

> I want to – I said I would come back briefly to one other issue, and this is the issue of – of knowledge.  And we discussed the motel room.  The motel room is for the issue of knowledge and for absolutely nothing else.  (RT at 399.)

13

14

15

16

17

18

19

20

21

The limiting instruction and counsel's argument made clear to the jury that it could only use the prior arrest evidence when considering Petitioner's knowledge of the nature of cocaine base–an issue that the jury could have found established by other evidence.  (See, e.g., RT at 120-26.)  The Court of Appeal's determination that the error in admitting the evidence was harmless was therefore not an objectively unreasonable application of *Chapman*.  See U.S. v. Olano, 507 U.S. 725, 740 (1993) ("[We] presum[e] that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them."); Butcher v. Marquez, 758 F.2d 373, 378 (9th Cir. 1985) (finding that limiting instruction supported the conclusion that no due process violation occurred).

22

23

24

Further, Petitioner has not shown that the admission of the prior arrest "had substantial and injurious effect or influence in determining the jury's verdict" as required by *Brecht*.  Brecht v. Abrahamson, 507 U.S. 619, 637-638 (1993).

25

**B.  Ground Three**

26

27

28

Petitioner argues that he was denied the effective assistance of counsel and thereby denied a fair trial when his counsel 1) failed to object to references to the officers being in a "gang unit"; and 2) failed to make a timely objection or motion for a mistrial after Quiroa testified that he was told

1   "Bobaloo" was selling drugs on Union Street.

2       These claims were presented in an appeal to the California Court of Appeal, which affirmed

3   the judgment on March 4, 2004.  (Lodged Docs. 1-5.)  The issues were then raised in a petition to the

4   California Supreme Court, which summarily denied review.  (Lodged Docs. 6-7.)  The California

5   Supreme Court, by its "silent order" denying the petition, is presumed to have denied the claims

6   presented for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501

7   U.S. 797, 803 (1991).

8       In rejecting Petitioner's claim, the Court of Appeal found that the failure to object to the

9   "obscure 'gang unit' references" may have been a tactical decision and that, in any case, there was no

10  significant inference that Petitioner was a gang member which necessitated an objection.  The court

11  further found that Petitioner failed to show prejudice as Quiroa clearly identified Petitioner as the

12  individual who sold him the cocaine base.  (Lodged Doc. 5 at 8-9.)  As to the failure to object to

13  Quiroa's hearsay testimony, the court found that counsel was not ineffective, as he admitted that his

14  failure to object was a tactical decision to avoid drawing attention to the issue.  The court stated that

15  counsel's decision to move for a mistrial outside the presence of the jury instead of objecting was

16  within the realm of competent representation.  (Lodged Doc. 5 at 10-11.)

17      The law governing ineffective assistance of counsel claims is clearly established for the

18  purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151

19  F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective

20  assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S. 668,

21  687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that

22  counsel's performance was deficient, requiring a showing that counsel made errors so serious that he

23  or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466

24  U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard

25  of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of

26  reasonable professional judgment considering the circumstances.  Id. at 688; United States v.

27  Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is

28  highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the

U.S. District Court
E. D. California

Jp

8

1   wide range of reasonable professional assistance.  <u>Strickland</u>, 466 U.S. at 687; <u>Sanders v. Ratelle</u>, 21

2   F.3d 1446, 1456 (9th Cir.1994).

3       Second, the petitioner must demonstrate that "there is a reasonable probability that, but for

4   counsel's unprofessional errors, the result ... would have been different."  <u>Strickland</u>, 466 U.S. at 694.

5   Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial,

6   one whose result is reliable.  <u>Id.</u> at 688.  The court must evaluate whether the entire trial was

7   fundamentally unfair or unreliable because of counsel's ineffectiveness.  <u>Id.</u>; <u>Quintero-Barraza</u>, 78

8   F.3d at 1345; <u>United States v. Palomba</u>, 31 F.3d 1356, 1461 (9th Cir. 1994).

9       A court need not determine whether counsel's performance was deficient before examining

10  the prejudice suffered by the petitioner as a result of the alleged deficiencies.  <u>Strickland</u>, 466 U.S. at

11  697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in

12  prejudice must necessarily fail.  However, there are certain instances which are legally presumed to

13  result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of

14  counsel or where the State has interfered with counsel's assistance.  <u>Strickland</u>, 466 U.S. at 692;

15  <u>United States v. Cronic</u>, 466 U.S. 648, 659 & n.25 (1984).  Ineffective assistance of counsel claims

16  are analyzed under the "unreasonable application" prong of <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

17  <u>Weighall v. Middle</u>, 215 F.3d 1058, 1062 (9th Cir. 2000).

18      1.  Failure to object to gang unit references

19      The state court's determination was not unreasonable.  While various officers did testify that

20  they were part of the "gang unit and narcotics division," "the Special Enforcement Unit which is

21  primarily a gang investigation unit," and "a gang unit," Petitioner does not identify any direct

22  evidence or testimony showing that he was a gang member or otherwise implicating him in gang

23  activities.  (RT at 223, 246, 252, 276, 295.)  Counsel was therefore not deficient in failing to object

24  to the references or, alternatively, in choosing to forego objecting to the references to avoid focusing

25  attention on the issue.  Further, Petitioner has not shown a reasonable probability that the result

26  would have been different if counsel objected to the references to the gang unit, as Quiroa explicitly

27  testified that Petitioner was the person who sold him the cocaine base.  (RT at 123-26.)

28

1    2.  Failure to object to Quiroa's hearsay testimony

2        The state court's determination was not unreasonable.  Quiroa stated during cross-

3    examination that, following his initial purchase of cocaine base from Petitioner, he went back to the

4    same location and attempted to locate Petitioner to make another purchase.  Quiroa testified that he

5    was told that "Bobaloo" had rock cocaine and that he was selling at the north end of Union Street.

6    (RT at 184-85.)  In arguing for a mistrial, defense counsel acknowledged that he made a tactical

7    decision to forego making a hearsay objection at the time the testimony was given because he did not

8    want the jury to think that he was hiding something or to lose trust in him because he attempted to

9    block the testimony.  (RT at 360-61.)  Petitioner has not shown that counsel's performance was

10   deficient, as the decision to forego a contemporaneous objection in favor of seeking a mistrial

11   outside the presence of the jury was a reasonable, tactical decision.  See Rutherford v. U.S., 242

12   Fed.Appx. 427, 428 (9th Cir. 2007) (rejecting an ineffective assistance claim where trial attorney's

13   failure to call a witness was a defensible, tactical decision).  Further, as with the other claim of

14   ineffective assistance, Petitioner has not shown a reasonable probability that the result would have

15   been different if counsel objected to Quiroa's hearsay testimony.

16       **C.  Ground Four**

17

18       Petitioner argues that his right to a jury trial and due process rights were violated when the

19   trial court instructed the jury that it was Petitioner's name that appeared on the documents admitted

20   to establish his prior convictions.  Petitioner argues that the question of identity should have been left

21   to the jury.

22       This claim was presented in an appeal to the California Court of Appeal, which affirmed the

23   judgment on March 4, 2004.  (Lodged Docs. 1-5.)  The issue was then raised in a petition to the

24   California Supreme Court, which summarily denied review.  (Lodged Docs. 6-7.)  The California

25   Supreme Court, by its "silent order" denying the petition, is presumed to have denied the claims

26   presented for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501

27   U.S. 797, 803 (1991).

28       In rejecting Petitioner's claim, the Court of Appeal found that the California Supreme Court

had determined that the right to a jury determination on the issue of identity is a right created by statute. The applicable statute stated that the court, not a jury, was to decide the identity issue. (Lodged Doc. 5 at 12-14.)  The court further rejected the claim that *Apprendi*, or other cases cited by Petitioner, required a jury finding with respect to prior convictions when offered as sentence enhancements.  (Id.)

Generally, a criminal conviction must rest upon a jury determination that the defendant is guilty beyond a reasonable doubt of every element of the crime with which he is charged.  See U.S. v. Gaudin, 515 U.S. 506, 509-510 (1995).  However, in Almendarez-Torres v. United States, 523 U.S. 224, 243-247 (1998), the Supreme Court held that a prior conviction that is used as a sentencing enhancement is not subject to the requirement that a jury find it true beyond a reasonable doubt.  See also U.S. v. Pacheco-Zepeda, 234 F.3d 411, 414 (9th Cir. 2000) ("*Almendarez-Torres* is dispositive here.  The district court was entitled to consider any prior aggravated felony convictions in sentencing Pacheco-Zepeda for illegal reentry even though such conduct had not been charged in the indictment, presented to a jury, and proved beyond a reasonable doubt.").  While the Supreme Court in *Apprendi* acknowledged that *Almendarez-Torres* may have been incorrectly decided, the Court decided not to revisit the case, instead classifying recidivism as a "narrow exception" to the general rule announced in *Apprendi*.  Apprendi v. New Jersey, 530 U.S. 466, 489-90 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); see U.S. v. Quintana-Torres, 235 F.3d 1197, 1200 (9th Cir. 2000) (stating that *Apprendi* did not overrule *Almendarez-Torres*).

The state court's determination was therefore not contrary to, or an unreasonable application of, clearly established Supreme Court law, as no case establishes that Petitioner is entitled to have the identity issue relating to his prior convictions tried to a jury.

## D.  Ground Five

Petitioner argues that his sentence of thirty years to life for the sale of a single rock of cocaine violates the Eight Amendment prohibition on cruel and unusual punishment.

This claim was presented in an appeal to the California Court of Appeal, which affirmed the

1  judgment on March 4, 2004.  (Lodged Docs. 1-5.)  The issue was then raised in a petition to the

2  California Supreme Court, which summarily denied review.  (Lodged Docs. 6-7.)  The California

3  Supreme Court, by its "silent order" denying the petition, is presumed to have denied the claims

4  presented for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501

5  U.S. 797, 803 (1991).

6        In rejecting Petitioner's claim, the Court of Appeal found that his sentence was not grossly

7  disproportionate given the nature of his offense and his 15-year criminal history.  (Lodged Doc. 5 at

8  11-12.)

9        A criminal sentence that is not proportionate to the crime for which a defendant is convicted

10  may indeed violate the Eighth Amendment.  The Supreme Court recently decided two cases which

11  discuss the clearly established federal law applicable to California Three Strikes cases.  See Ewing v.

12  California, 538 U.S. 11 (2003); Lockyer v. Andrade, 538 U.S. 63 (2003).

13        In Andrade, the Supreme Court held that "the only relevant clearly established law amenable

14  to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality

15  principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and

16  'extreme' case."  Lockyer v. Andrade, 538 U.S. 63, 73 (2003).  Citing extensively to its past cases

17  dealing with criminal sentencing and proportionality under the Eighth Amendment, the Court

18  acknowledged that it has "not established a clear or consistent path for courts to follow."  Id. at 72.

19  The Court analyzed Andrade's sentence under Rummel v. Estelle, 445 U.S. 263 (1980), Solem v.

20  Helm, 463 U.S. 277 (1983), and Harmelin v. Michigan, 501 U.S. 957 (1991), holding that it was not

21  objectively unreasonable for the California Court of Appeal to conclude that the contours of the

22  gross disproportionality principle permitted an affirmance of Andrade's Three Strikes sentence.  Id.

23  at 73-77.

24        In Ewing, the Supreme Court again reviewed the constitutionality of a Three Strikes sentence

25  of 25 years to life for stealing three golf clubs.  After reviewing the Court's Eighth Amendment

26  jurisprudence, the Court chose to adopt Justice Kennedy's view[2] that:

27

28  _____

        [2] As expressed in his concurring opinion in Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (citing Solem v. Helm, 463 U.S. 277, 288 (1983)).

[There are] four principles of proportionality review–the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality be guided by objective factors–that inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are grossly disproportionate to the crime.

Ewing v.  California, 538 U.S. 11, 23-24 (2003) (quotation marks omitted).

Recognizing that state legislatures have a right to formulate penological schemes consistent with the state's policy goals and free from federal intrusion, the Court validated the California Three Strikes law, stating "[s]electing the sentencing rationales is generally a policy choice to be made by state legislatures, not federal courts."  Id. at 25.  The Court deferred to the California Legislature's policy judgment to enact a tough recidivism statute and held that states have "a valid interest in deterring and segregating habitual criminals."  Id.

In conducting a proportionality review of Ewing's sentence, the Court stated, "[i]n weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism."  Id. at 29.  The Court noted that "[a]ny other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions."  Id.  In imposing a Three Strikes sentence on a recidivist criminal, the Court recognized the state's interest in dealing "in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law."  Id.  Accordingly, proportionality review must take this interest into account.  Id.  The Court held that Ewing's sentence of 25 years to life was justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by Ewing's long, serious criminal record.  Id. at 29-30.

In reviewing Petitioner's claim, this Court will begin with a brief overview of Eighth Amendment jurisprudence and the proportionality standard.  In *Rummel*, the Court upheld a life sentence imposed under a Texas recidivist statute for a defendant convicted of obtaining $120.75 by false pretenses, an offense normally punishable by imprisonment for two to ten years.  Rummel v. Estelle, 445 U.S. 263, 265-66 (1980).  However, because he had two prior felony convictions (for fraudulent use of a credit card and passing a forged check), and had served two prior prison terms,

1   the prosecution chose to proceed under the state's recidivist statute, which carried a life sentence.  <u>Id.</u>

2   The Supreme Court held that Rummel's sentence of life imprisonment with the possibility of parole

3   did not violate the Eighth Amendment.  <u>Id.</u>  The Court noted that Rummel had suffered two separate

4   convictions and terms of imprisonment for each prior, that he would be eligible for parole in twelve

5   years, and that under the Texas recidivist statute, prosecutors retained the discretion not to invoke the

6   statute for "petty" offenders.  <u>Id.</u> at 278-81.

7         Three years later, the Supreme Court set forth the criteria for finding a sentence to be cruel

8   and unusual punishment under the federal Constitution and affirmed a decision of the Eighth Circuit

9   holding unconstitutional a sentence of life imprisonment without the possibility of parole for a

10   seven-time nonviolent felony recidivist.  <u>Solem v. Helm</u>, 463 U.S. 277 (1983).  Defining a three-part

11   proportionality criteria, the Court concluded that Helm's sentence was grossly disproportionate to his

12   crime of uttering a "no account" check for $100.00, even in light of his six prior nonviolent felony

13   convictions: three for third degree burglary, one for obtaining money under false pretenses, one for

14   grand larceny, and one for driving while intoxicated.  <u>Id.</u> at 279-84, 290-92.  The Court emphasized

15   that Helm's life sentence was far more severe than the sentence it had considered in *Rummel* because

16   Rummel was likely to be eligible for parole in twelve years, while Helm was given no possibility of

17   parole.  <u>Id.</u> at 297.

18         In *Harmelin*, the defendant received a mandatory sentence of life in prison without the

19   possibility of parole for possession of more than 650 grams of cocaine, his first felony offense.

20   <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991).  The Supreme Court upheld the sentence, with five

21   justices agreeing, for varying reasons, that the sentence did not violate the Eighth Amendment.

22   Although the Court did not produce a majority opinion, seven justices favored some manner of

23   proportionality review.  Justice Kennedy, joined by Justices O'Connor and Souter, stated that a

24   noncapital sentence could violate the Eighth Amendment if it was "grossly disproportionate" to the

25   crime, but concluded that courts need not examine the second and third factors of intrajurisdictional

26   and interjurisdictional reviews discussed in *Solem*, unless "a threshold comparison of the crime

27   committed and the sentence imposed leads to an inference of gross disproportionality."  <u>Id.</u> at 1005.

28         The majority of the justices in *Harmelin* agreed that outside capital punishment, deeming a

1  sentence cruel and unusual punishment is "exceedingly rare" due to the lack of objective guidelines

2  for terms of imprisonment.  Id. at 963-64.  The threshold for such an inference of disproportionality

3  is high.  See id. at 1001 (Kennedy, J., concurring); see also United States v. McDougherty, 920 F.2d

4  569, 576 (9th Cir. 1990) ("Generally, so long as the sentence imposed does not exceed the statutory

5  maximum, it will not be overturned on eighth amendment grounds.").

6      The Harmelin Court concluded that the defendant's sentence did not meet the threshold

7  factor of "gross disproportionality."  Justice Kennedy stressed the serious nature of Harmelin's

8  offense, stating that the offense "threatened to cause grave harm to society" unlike "the relatively

9  minor, nonviolent crime at issue in Solem."  Harmelin, 501 U.S. at 1002.  Justice Kennedy further

10  noted that the "[p]ossession, use, and distribution of illegal drugs represent 'one of the greatest

11  problems affecting the health and welfare of our population'" and that the quantity of cocaine

12  possessed by Harmelin had a potential yield of between 32,500 and 65,000 doses.  Id.

13      The state court's determination that Petitioner's sentence did not violate the Eighth

14  Amendment was not unreasonable.  Petitioner's sentence of thirty years to life does not raise an

15  inference of gross disproportionality to his crimes, as he was convicted of selling cocaine base, and

16  he had two prior convictions for robbery and a prior conviction for possessing cocaine base for sale.

17  CT at 261-67; see, e.g. Lockyer v.  Andrade, 538 U.S. 63, 66-68, 76 (2003) (denying habeas claim

18  that Three Strikes sentence of 50 years to life was unconstitutionally disproportionate to conviction

19  for two counts of shoplifting videotapes worth total of $153.54, where defendant had suffered three

20  prior convictions for residential burglary); Harmelin v. Michigan, 501 U.S. 957 (1991) (plurality

21  opinion) (upholding sentence of life without possibility of parole for first offense of possession of

22  672 grams of cocaine); Hutto v. Davis, 454 U.S. 370, 370-71, 375 (1982) (rejecting challenge to a

23  40-year sentence for possession with intent to distribute less than nine ounces of marijuana);

24  Rummel v. Estelle, 445 U.S. 263, 265-66 (1980) (upholding a life sentence imposed under a

25  recidivist statute where the three felonies were passing a forged check for $28.36, fraudulent use of a

26  credit card to obtain $80.00 worth of goods and services, and obtaining $120.75 by false pretenses).

27

28

1

### RECOMMENDATION

2

3          Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

4  DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for

5  Respondent.

6          This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United

7  States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304

8  of the Local Rules of Practice for the United States District Court, Eastern District of California.

9  Within thirty (30) days after being served with a copy, any party may file written objections with the

10  court and serve a copy on all parties.  Such a document should be captioned "Objections to

11  Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

12  filed within ten (10) court days (plus three days if served by mail) after service of the objections.

13  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The

14  parties are advised that failure to file objections within the specified time may waive the right to

15  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16  IT IS SO ORDERED.

17

**Dated:    July 3, 2008**                    **/s/ John M. Dixon**

18  9f4gk8                                        UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28